UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY L. CROPSEY,

    Plaintiff,

v.                                        Case No. 8:08-cv-519-T-24EAJ

THE SCHOOL BOARD OF MANATEE
COUNTY, FLORIDA, ROGER DEARING,
and MICHAEL RIO,

    Defendants.
_____/

## **ORDER**

        This cause comes before the Court on a motion for summary judgment filed by Defendants The School Board of Manatee County, Florida ("School Board"), Roger Dearing, and Michael Rio. (Doc. No. 10.) In this case, Plaintiff Mary L. Cropsey, a former employee of the School Board, alleges that the defendants did not renew her annual teaching contract and terminated her employment in order to punish her and retaliate against her for exercising her constitutionally protected rights of free speech, to engage in legitimate criticisms of matters of public concern concerning school conditions and safety, and to exercise her right against self incrimination and to have representation of her choosing. Cropsey has asserted four claims for relief, invoking Florida Statute section 26.012, Article V, section 5 of the Florida Constitution, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

**I.    Background**

        In December of 2005, Cropsey was hired by Defendant Michael Rio, Principal of Virgil Mills Elementary, as a full-time substitute teacher at the school for the upcoming spring

semester. At the completion of the 2005-2006 school year, Cropsey was offered, and she accepted, an annual contract to return to Virgil Mills Elementary as a full-time third grade teacher for the 2006-2007 school year.

### A. Non-renewal of Cropsey's Annual Contract

On or about January 1, 2007, Principal Rio received the projected student allotments for the 2007-2008 school year. According to these projections, the number of students projected to attend Virgil Mills Elementary for the 2007-2008 school year was 795 compared to 1000 from the previous year. This decrease in student allotment was due, in large part, to the opening of a new elementary school. Due to this decrease, there were an excess of teachers and staff members at Virgil Mills Elementary.

Consequently, Principal Rio decided not to renew the annual contracts of nine teachers for the 2007-2008 school year. Cropsey was informed of her non-renewal on January 2, 2007. Of these nine teachers, all of them were younger than Cropsey, and six of them were under the age of forty. None of these teachers were placed in the transfer pool.[1]

---

[1] At this point, it is appropriate to mention that the factual record in this case, which was developed almost entirely by Defendants, is lengthy. It consists of transcripts of the depositions of Plaintiff Cropsey and Defendant Dearing, Defendant Rio's affidavit, transcripts of the due process hearings before the Manatee County School Board, EEOC filings, and other relevant documents. Although Cropsey did not file any exhibits in support of her opposition to Defendants' summary judgment motion, the Court has considered all of the evidence, regardless of which party submitted it, in ruling on this motion. The Court is obligated to "consider the entire record in the case, not just those pieces of evidence which have been singled out for attention by the parties." *Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1519 (11th Cir. 1990).

In her Statement of Facts, which is really a mixture of factual assertions (some supported and some unsupported by the record) and legal arguments, Cropsey contends that "all of the teachers who were non-renewed were ultimately provided teaching positions with the Manatee County public schools if they sought a transfer." (Doc. No. 17, p.4.) However, she did not provide the Court with a citation to the record where this purported fact is located, and the Court was unable to locate support for this fact on its own review of the record. The Court therefore

On February 23, 2007, there was a publicized incident involving a student who was kidnapped while waiting for the school bus. Following the incident, Cropsey advised Principal Rio of various safety concerns at Virgil Mills Elementary. Specifically, Cropsey was concerned about an "outsider's" ability to gain access to the school's facility. Cropsey raised these concerns after she received notice of her non-renewal.

On March 7, 2007, Cropsey met with the School Board's Equity Coordinator, Dr. Al Smith, to discuss what she believed to be unfair and retaliatory treatment in respect to her non-renewal and to discuss her prospects for employment for the 2007-2008 school year. During the meeting, Cropsey complained that her contract was not renewed because Principal Rio did not like her and had not liked her since about the first week of her employment. Her belief was based on the fact that Rio rarely spoke to her, failed to introduce her at a faculty meeting, and failed to invite her to a faculty luncheon. She also believed that her relationship with Principal Rio deteriorated after she complained to him about health and safety issues in her portable classroom.

During the meeting, Cropsey also complained of the school's religious atmosphere. Specifically, she recalled an incident where Principal Rio held a prayer session around the flag pole on National Day of Prayer. The prayer session was voluntary and open to all faculty and students. Cropsey chose not to participate. Cropsey complained that Rio made biblical references during staff meetings and wore a "Jesus saves" bracelet. At times, Cropsey viewed Rio's religious expressions as being "bizarre," but never objected to these practices until she

---

views this statement as an assertion of fact that is unsupported by the record.

3

spoke with Dr. Smith.

B. **Termination of Cropsey's Employment**

The following day, on March 8, 2007, a parent of one of the students in Cropsey's third grade class requested a meeting with Principal Rio to discuss concerns regarding Cropsey's administration of the FCAT examination. The parent indicated that on February 26, 2007, his child informed him that she had not completed the last seven questions on the FCAT Reading exam. The following day, his child informed him that someone completed those questions for her after she turned in the examination, and believed that Cropsey provided her with the additional assistance.

Upon hearing these allegations, Principal Rio reported the parent's concerns to Carla Frazier, the School District's Supervisor of Measurement and Data Analysis, who reported the same to the Florida Department of Education. Per the Department's instructions, Frazier investigated the alleged improprieties regarding the FCAT examination. Frazier interviewed the student, who confirmed the information provided to her father and informed Frazier that she believed Cropsey provided other students with additional time. Frazier interviewed these other students, each of whom confirmed this allegation. On March 15, 2007, Frazier completed her investigation and reported her findings to the Department of Education. Her report did not contain a conclusion regarding whether Cropsey violated any FCAT procedure or any recommendation for her discipline.

In the afternoon of March 8, 2007, Cropsey received a letter from Principal Rio in which he notified her that there had been allegations made regarding a violation of FCAT procedures. The letter advised Cropsey that her presence was required on Friday, March 9, 2007 at 2:45 p.m.

at the school's conference room to discuss these allegations and that she "may bring representation if [she] would like." At the time Rio authored the letter, he did not know of Dr. Smith's conversation with Cropsey the day before.

On March 9, 2007, Charles M. Britt, an attorney for Cropsey, communicated on her behalf with John Bowen, an attorney for the School Board, regarding Principal Rio's request that she attend a meeting to discuss the alleged FCAT violations. Bowen explained to Britt that Principal Rio's statement that Cropsey "may bring representation" to the meeting referred to her right to bring a union representative to the meeting, and that Britt was not permitted to attend the meeting.

It was at this time that Bowen learned that Cropsey intended not to answer any questions concerning the alleged FCAT violations. Bowen informed Britt that Cropsey's refusal to respond to the questioning would not be excused; however, in light of her decision, her attendance at the meeting would be unnecessary. Britt faxed a letter to Bowen, confirming the substance of their conversation and Cropsey's decision not to answer any questions regarding the allegations: "I can assure you that I and Mrs. Cropsey take these allegations very seriously and bearing in mind F.S.S. § 1008.24(2) you can understand our decision to decline any statement in reference to this type of allegation." (emphasis in original). Later that day, Cropsey received a letter from Defendant Roger Dearing, Superintendent of Schools, informing her that she was being placed on paid administrative leave, pending the outcome of the investigation into her alleged misconduct.

On March 13, 2007, Cropsey received another letter from Superintendent Dearing in which he informed her that he was recommending her termination to the School Board for her

"refus[al] to cooperate with an investigation into an allegation that [she] violated FCAT test protocols." He further informed her that she was entitled to a public hearing regarding the recommendation, and that if she requested such a hearing, he would instead recommend that she be suspended without pay pending the outcome of the hearing. Superintendent Dearing's recommendation, whether it be for termination or for suspension without pay pending the outcome of the hearing, would be considered by the School Board at its next regularly-scheduled meeting on April 9, 2007.

### C. Cropsey's Termination

Cropsey requested and received a due process hearing on June 5, August 6, August 9, and August 20, 2007, before the School Board in order to determine whether just cause existed to support Superintendent Dearing's recommendation for termination. Cropsey was represented by counsel at the hearing, and was permitted to present testimony and evidence in her defense.

At the conclusion of the hearing, the School Board issued its Final Order on November 30, 2007. In its Final Order, the School Board made the following findings:

> [It] has [been] established by a preponderance of the evidence that on March 9, 2007, [the School Board] ordered Cropsey to attend an investigative interview for the purpose of responding to questions relating to alleged misconduct in her administration of the FCAT examination. Cropsey's participation in this interview was compelled under School Board Policy 6.13(4), which expressly provides that failure to cooperate completely and truthfully will result in disciplinary action. Despite this obligation and through a letter from her attorney dated March 9, 2007, Cropsey refused to provide any statement concerning the FCAT allegations, and at no time prior to the evidentiary hearing did Cropsey or her attorney indicate her willingness to participate as requested by [the School Board]. Cropsey was not privileged, under the Fifth Amendment or otherwise, to refuse to participate in the investigatory interview since her answers were automatically immune from use in any subsequent criminal proceedings. [The School Board] did not have any obligation or authority to advise or inform Cropsey of such immunity, and had no opportunity to do so because Cropsey refused to even appear for the requested interview. [The School Board] has a right

6

> to inquire of its employees as to matters relating to their job performance and
> fitness for work, and must be permitted to take disciplinary action in the event its
> employees refuse to respond to those inquires.

Additionally, the School Board found that it had been established by a preponderance of the evidence that Cropsey's conduct in refusing to provide any statement concerning the allegations of FCAT misconduct constituted a violation of Policy 6.13(4)(A) and (B) of the Policies and Procedures Manual of the School Board of Manatee County, which provides that all employees shall cooperate fully with investigating authorities and failure to do so will subject an employee to disciplinary action.[2] The Final Order stated that this violation, alone, constituted just cause in support of Cropsey's termination. Consequently, Cropsey's employment was terminated effective April 10, 2007.

However, the School Board found that it had not been established by a preponderance of the evidence that Cropsey had violated FCAT Test security and protocols by inappropriately assisting students in taking of the exam. No explanation was provided for this finding in the Final Order.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and

---

[2]The School Board also determined that Cropsey's conduct in refusing to provide any statement concerning the allegations constituted "misconduct in office" in violation of Rule 6B-4.009(3) of the Florida Administrative Code and "gross insubordination" in violation of Rule 6B-4.009(4).

resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.*

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.* In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III. Discussion

### A. Count I: 42 U.S.C. § 1983

In Count I of her complaint, Cropsey contends that the defendants terminated her employment in retaliation for her "exercis[ing] her constitutionally protected rights of free speech, to engage in legitimate criticism of matters of public concern regarding school classroom conditions and safety, to object to the school's religious atmosphere, to exercise her right against self incrimination and to have representation of her choosing." Contrary to these allegations, the undisputed evidence reveals that Cropsey is not entitled to relief against the defendants under 42 U.S.C. § 1983 as there was no violation of her rights under the First, Fifth, or Fourteenth Amendment to the U.S. Constitution.

#### 1. Cropsey cannot establish a First Amendment claim.

To establish that she was wrongfully terminated for exercising her First Amendment

8

rights, Cropsey must show by a preponderance of the evidence that: (1) her speech was on a matter of public concern; (2) that her "first amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech in order to promote the efficiency of the public services it performs through its employees;" and (3) that her speech "played a substantial part in the employer's decision to . . . discharge [her]." *Stanley v. City of Dalton*, 219 F.3d 1280, 1288 (11th Cir. 2000). If Cropsey is successful in establishing these factors, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have reached the same decision . . . even in the absence of the protected conduct." *Id.* (quotations and citations omitted).

The parties dispute whether Cropsey's speech was on a matter of public concern. "To involve a matter of public concern, a government employee's speech must 'relate[e] to any matter of political, social, or other concern to the community.'" *Id.* at 1288, n.13 (quoting *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)). "Because '[a]n employee's speech will rarely be entirely private or entirely public,' the 'main thrust' of the employee's speech must be determined." *Id.* (quoting *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993)). "This determination is made by examining 'the content, form and context of a given statement, as revealed by the whole record.'" *Id.* (quoting *Connick*, 461 U.S. at 147-48, 103 S. Ct. 1684). If the employee speaks "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147, 103 S. Ct. 1684.

Cropsey contends that her complaints to Principal Rio about the health and safety

9

conditions of her portable classroom and about an "outsider's" ability to gain access to the school, as well as her complaint to Dr. Smith regarding the religious atmosphere at Virgil Mills Elementary, constitute speech of public concern. She argues that she raised these concerns not as a teacher and not to improve her workload or salary, but rather as a citizen who was concerned about the conditions and safety of the school.

It is difficult for the Court to make the necessary examination of the content, form, and context of these statements because the record is not adequately developed to show the circumstances of the speech; i.e., when and how often Cropsey made her complaints, and what specific statements she made. The fact that Cropsey's speech involved school conditions does not automatically mean that her speech was of public concern. *See Maggio v. Sipple*, 211 F.3d 1346, 1352 (11th Cir. 2000) (noting that speech that contains "a public concern aspect" is not necessarily protected speech). Defendants pointed the Court to Cropsey's generalized testimony that she complained to Principal Rio about her classroom's air conditioner. Cropsey made this complaint in the course of performing her duties as a teacher and to improve her working conditions, not as a citizen intending to raise an issue of public concern, and therefore, it does not constitute protected speech. *See id.* (noting that "the relevant inquiry is whether the purpose of . . . the speech was to raise issues of public concern or to further her own private interest") (quotations and citations omitted). Likewise, Cropsey voiced her objection to the religious atmosphere of the school not because she wished to raise an issue of public concern, but because she believed her failure to embrace that atmosphere caused Principal Rio not to renew her annual contract. Therefore, this speech was made to further her own private interest.

Moreover, even if Cropsey's speech was of a public concern, she does not even attempt

to prove that her speech played a substantial part in Principal Rio's decision not to renew her contract or the School Board's decision to terminate her employment. To the contrary, the undisputed record establishes that Principal Rio first declined to renew the annual contracts of nine teachers, including Cropsey's contract, due to the projected shortage in student allotment for the upcoming school year. The record is devoid of any evidence that suggests that Principal Rio's or the School Board's decisions were motivated by their desire to retaliate against Cropsey because of her protected speech. In fact, there is no record evidence that suggests that Superintendent Dearing or the School Board knew of Cropsey's prior complaints.

The only speech that could arguably be considered protected is Cropsey's concern that outsiders had access to the school facility, which she voiced to Principal Rio after a student kidnapping. Again, the Court does not know specific circumstances of this speech. Regardless, Cropsey admitted at her deposition that she voiced this concern after she was notified of her non-renewal and that the two had nothing to do with one another.

### 2. Cropsey cannot establish a Fifth Amendment claim.

It is well settled that the Fifth Amendment privilege against self-incrimination permits a person "not to answer official questions put to him in any other proceedings, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 95 S. Ct. 316, 322, 38 L. Ed. 2d 274 (1973). A public employee may not be coerced into surrendering the privilege by threat of being fired or subjected to other sanctions, *Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S. Ct. 2132, 2135, 53 L. Ed. 2d 1 (1977), and if he has been coerced into waiving the privilege, his answers are not admissible against him in a subsequent criminal trial. *Garrity v. New Jersey*, 385 U.S. 493, 500, 87 S. Ct.

11

616, 620, 17 L. Ed. 2d 562 (1967).

However, "[t]he state . . . can compel a public employee to answer questions in a formal or informal proceeding by granting that employee immunity from future criminal prosecution based on the answers given." *United States v. Vangates*, 287 F.3d 1315, 1321 (11th Cir. 2002). The Eleventh Circuit has held that this use immunity "*automatically* attaches to compelled incriminating statements *as a matter of law*" and that any grant of use immunity to a public employee during a disciplinary investigation "would [be] duplicative." *Hester v. City of Milledgeville*, 777 F.2d 1492, 1496 (11th Cir. 1985).

Cropsey contends that the defendants violated her Fifth Amendment rights in terminating her employment after she expressed her intention to invoke her right not to make any statement in response to the allegations of FCAT violations. Such an argument, however, ignores clear precedent which states that "if the [public employee] has not been required to waive [her Fifth Amendment] protection, but has refused to answer questions 'specifically, directly, and narrowly relating to the performance of [her] official duties,' the privilege [does not] bar . . . dismissal." *Erwin v. Price*, 778 F.2d 668, 670 (11th Cir. 1985) (ruling that the Fifth Amendment privilege against self-incrimination did not bar a police officer's discipline and dismissal when he refused to answer questions under a threat of dismissal during a disciplinary investigation) (quoting *Gardner v. Broderick*, 392 U.S. 273, 278, 88 S. Ct. 1913, 1916, 20 L. Ed. 2d 1082 (1968)); *see also, Hester*, 777 F.2d at 1495 (noting that the privilege against self-incrimination is limited to "any criminal case" and "does not prevent a governmental unit from taking non-criminal disciplinary action against an employee on the basis of compelled testimony"). Here, Cropsey was not privileged under the Fifth Amendment to refuse to participate in the investigatory

12

interview because her answers were automatically immune from use in any subsequent criminal proceedings.

The Court rejects Cropsey's additional argument that the School Board was required to notify her of the use immunity that automatically applied to her. Cropsey has not provided, and the Court was unable to locate, any precedent which would require the School Board to advise Cropsey of the operation of use immunity under these circumstances.

### B. Count II: Florida Statute § 120.62

In Count II, Cropsey contends that the defendants violated Florida Statute section 120.62 when they denied her the right to bring her attorney, Charles Britt, with her to the investigative interview scheduled for March 9, 2007. The statute provides:

> Any person compelled to appear, or who appears voluntarily, before any presiding officer or agency in an investigation or in any agency proceeding has the right, at his or her own expense, to be accompanied, represented, and advised by counsel or by other qualified representatives.

Fla. Stat. § 120.62(2). To resolve this claim, the Court must construe section 120.62 according to its "plain and ordinary meaning." *Verizon Food, Inc. v. Jacobs*, 810 So. 2d 906, 908 (Fla. 2002). Based on the statute's plain meaning, section 120.62(2) provides a right to counsel only to a person compelled to appear before a "presiding officer" or the "agency" in an investigation or in any agency proceeding. At the March 9, 2007 investigative interview, Cropsey was ordered to appear before Principal Rio and Carla Frazier, Supervisor of Measurement and Data Analysis, to discuss the FCAT violations.

The question then becomes whether either Principal Rio or Supervisor Frazier qualify as "presiding officers" or the "agency" within the meaning of the statute. Cropsey contends that because the School Board can act only through its agents or representatives, and because the

13

School Board delegated its power to conduct investigative interviews to Rio and Frazier, they must be considered authorized representatives of the "agency" for purposes of the statute.[3]

Summary judgment is appropriate on this claim because Cropsey has not met her burden of demonstrating that either Rio or Frazier constituted the "agency" before whom she was compelled to appear. There is no evidence that either Rio or Frazier would have been acting on behalf of the School Board during the interview, nor is there any evidence that the School Board delegated its power to them. Moreover, even assuming that Rio or Frazier qualified as "presiding officers" or the "agency" within the meaning of section 120.62 and that Cropsey could satisfy all other elements of the statute, the Court is uncertain–and Cropsey has failed to show–that section 120.62 provides her with a private cause of action against these defendants for refusing to allow her attorney to be present at the March 9, 2007 interview.

> **C.** **Counts III and IV: Religion and Age Discrimination under Title VII of the Civil Rights Act of 1964**

In Counts III and IV of her Complaint, Cropsey contends that the defendants discriminated against her because of her age and religion when they did not renew her annual contract and terminated her employment. She alleges that other employees, who were younger or who embraced the religious atmosphere at Virgil Mills Elementary School, were treated more favorably in respect to obtaining future employment.

To establish a prima facie case of disparate treatment under Title VII, Cropsey must establish that: (1) she was a member of a protected class or religion; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) a similarly-situated, non-

---

[3] The Florida Statutes define "agency" as an "educational unit[]," which is in turn defined as a "local school district." Fla. Stat. §§ 120.52(1)(b)(7) & (1)(b)(6).

protected employee was treated more favorably. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). Cropsey has not established a prima facie case of discrimination because she has failed to show that a similarly-situated, non-protected employee was treated more favorably in the terms or conditions of employment.

Cropsey contends that other teachers whose contracts, like hers, were not renewed were later assisted by Principal Rio in obtaining another teaching position. However, the record does not support this contention. To the contrary, the undisputed record shows that Principal Rio decided not to renew the annual contracts of nine teachers for the 2007-2008 school year because of a shortage in student allotment. Cropsey has failed to identify–and the Court has been unable to locate on its own review–any teachers whose contracts were not renewed and who later obtained a teaching position for the 2007-2008 school year, with or without Principal Rio's assistance.

Furthermore, even assuming that Cropsey established a prima facie case of discrimination, she has failed to present any evidence that the defendants' legitimate, non-discriminatory reasons for not renewing her contract and for terminating her employment were pretextual. Cropsey alleges that the fact that other non-renewed teachers later received teaching jobs and the fact that she was exonerated of all FCAT testing violations are evidence of pretext. As previously stated, however, the record does not support her allegation that other non-renewed teachers received teaching jobs. Moreover, Cropsey's mere allegation that the alleged FCAT violations were a ruse designed by Principal Rio and Superintendent Dearing to justify terminating her employment is insufficient. "To survive summary judgment, the plaintiff must . . . present concrete evidence in the form of specific facts which show that the defendant's

proferred reason is mere pretext. Mere conclusory allegations and assertions will not suffice."
*Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

**IV.** **Conclusion**

In conclusion, viewing the entirety of the record in the light most favorable to Cropsey, there are no genuine issues of material fact as to any of her claims. Accordingly, the defendants' motion for summary judgment is granted in its entirety. The Clerk is directed to enter judgment in favor of the defendants, to close this case, and to terminate any pending motions.

**DONE AND ORDERED** at Tampa, Florida, this 4th day of May, 2009.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record